IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ZACK MORRIS, #A6047127, | ) | CIV. NO. 12-00084 SOM/RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DISMISSING COMPLAINT AND |
| vs. | ) | DENYING IN FORMA PAUPERIS |
| | ) | APPLICATION AND REQUEST FOR |
| TED SAKAI, et al., | ) | COUNSEL |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT AND DENYING IN FORMA PAUPERIS APPLICATION AND REQUEST FOR COUNSEL

Before the court is *pro se* Plaintiff Zack Morris's prisoner civil rights complaint, *in forma pauperis* ("IFP") application, and request for appointment of counsel.  ECF #1,3, & #4.  Morris is confined at the Maui Community Correctional Center ("MCCC").  Morris did not sign the Complaint, IFP application, or request for counsel.  Instead, all documents in this case were written, signed, and submitted by another inmate, Chris Grindling, allegedly on Morris's behalf.  For the following reasons, Morris's Complaint is DISMISSED with leave to amend, and his IFP application and request for appointment of counsel are DENIED without prejudice.

### I. BACKGROUND

Grindling states, "Plaintiff is blind and can't read and thus can not declare under penalty of perjury this [Complaint] is true[.] I Chris Grindling who wrote this will" [signed Chris Grindling]."  Compl., ECF #1 PageID #15.  On the

unsigned IFP application, Grindling states, "If I sent this to accountant I would get written up and punished."[1]   IFP Application, ECF #3 PageID #22 (signed by Grindling on February 13, 2013).   The documents before the court include no evidence that Morris is aware of this lawsuit.   This made the court concerned about the legitimacy of the documents, and the court's concern was promptly corroborated when, to its surprise, it received unsolicited information from the Hawaii Department of Public Safety staff.

Specifically, the court received a copy of a memorandum from a prison chaplain to the MCCC acting warden, stating that Morris had informed the chaplain that Morris had not approved the filing of the present lawsuit under his name!

Count I alleges violations under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132.   Grindling broadly alleges that "all named defendants" have failed to provide Morris appropriate facilities for his blindness, which he alleges excludes Morris from daily activities due to his disability.   Grindling states that, because Morris cannot read or write, he cannot contact his family or friends, access the law

---

[1] In contrast to this statement, Grindling submitted a medical request on Morris's behalf on February 15, 2013, requesting an inmate aide.   *See* ECF #4.   A prison official responded to *Morris*, explaining that the prison did not provide medical aides, but asking what activities he needed help with, presumably so that arrangements would be made.

library, or submit grievances.  Grindling further alleges that
Morris was assaulted at MCCC because he is helpless, cannot
defend himself, and is a sex offender.  Grindling complains that:
(1) there are no guard rails or ladders on MCCC's beds (although
he does not allege that Morris has fallen); (2) Morris fell in
the shower because he has no inmate aide; (3) Morris is diabetic
and receives no treatment, periodic check ups, or blood tests;
(4) Morris's eye patch was taken and his eyeglasses were broken
in the assault; and (5) Morris has been forced to sleep on the
floor at times due to overcrowding.  Grindling demands that
Morris be provided with an "inmate aide" or assistant to help him
in the shower, at recreation, etc.

   In Count II, Grindling expands the complaint to assert
claims on behalf of *all MCCC inmates* and seeks class
certification.  Most of the claims in Count II are not specific
to Morris.  For example, Grindling complains that MCCC's cells
are frequently searched, are cold and overcrowded, are constantly
lit, require some inmates to sleep on the floor, and lack guard
rails or ladders for the beds.  He claims that MCCC does not
provide warm clothes, forces inmates to purchase overpriced
hygiene supplies, fails to follow an "approved" menu or require
the food handlers to wear hairnets, provides inadequate time to
clean the cells, and allows only one book and three magazines at
a time to be sent to an inmate in a segregation unit.  He

complains that inmates are unable to enforce rules through the grievance process.  Most of what is alleged in Count II fails to rise to the level of a constitutional violation, and, as written, fails to state a claim.

The only claims that specifically relate to Morris in Count II are Grindling's reiteration that MCCC is not monitoring Morris's diabetes or blindness.  Grindling states that he alerted Defendants to these overall problems at MCCC through his own grievances and lawsuits.  Later, however, Grindling states that many of these issues were "not grieved but defendants should have known."  Compl., ECF #1 PageID #9-11.

In Count III, Grindling broadly alleges civil liberties violations on behalf of all MCCC inmates.  Grindling complains that MCCC limits inmate correspondence to ten people and requires inmates to provide their correspondents' social security numbers and birth dates.  He complains again regarding the one-book, three-magazine rule in segregation.  He complains that all grievances are denied, inmate account ledgers are unclear, inmates cannot talk or pass articles to other inmates, inmates lose their possessions during transfers, there is no access to required parole programs, and no kosher diets in Hawaii's prisons.  Grindling states again that Morris is blind and unable to grieve these issues affecting all MCCC inmates, arguing that this makes class certification and appointment of counsel

4

appropriate.  These vaguely stated claims fail to articulate a

violation of the Constitution or laws of the United States, and

therefore fail to state a claim under 42 U.S.C. § 1983.

Grindling has accrued three strikes pursuant to 28

U.S.C. § 1915(g), and cannot bring claims on his own behalf

without concurrently paying the civil filing fee or alleging

imminent danger of serious physical injury.[2]  The claims that are

not specific to Morris clearly do not allege imminent danger of

serious physical injury to Grindling or to other MCCC inmates.

It therefore appears that Grindling is using Morris's legitimate,

albeit unexhausted claims, to bootstrap Grindling's own

grievances against MCCC officials into a federal suit that skirts

§ 1915(g)'s requirements applicable to Grindling.

## II.  RULE 11

Rule 11 of the Federal Rules of Civil Procedure

requires that pleadings be signed by at least one attorney, or,

if the party is unrepresented, signed by the party.  *See* Fed. R.

Civ. P. 11(a).  The court understands that Morris is blind, but

this does not mean that Grindling may sign without Morris's

---

[2] *See Grindling v. Hawaii*, 1:09-cv-00536 (D. Haw. Nov. 18,
2009) (dismissed as frivolous); *Grindling v. Thomas*, 2:09-cv-2395
(D. Ariz. Mar. 11, 2010) (dismissed as frivolous); *Grindling v.
Hawaii*, App. Ct. No. 10-15010 (9th Cir. Mar. 11, 2010) (appeal of
1:09-cv-00536 deemed frivolous).  Grindling has been notified of
these strikes.  *See Grindling v. Jinbo*, 1:12-cv-00361 (D. Haw.
Sept. 28, 2012); *Grindling v. Jinbo*, 2:11-cv-0611  (D. Ariz., May
26, 2011).

approval.  First, Grindling's statement that Grindling must sign
for Morris is simply not credible.  Prison officials are able to
designate someone to assist Morris in signing his name to a legal
document that carries great responsibilities and may incur
serious consequences to him.  The court has no reason to think
that Grindling is the sole person available to sign for Morris.
Moreover, as noted, the court has received information that
Morris was not aware that Grindling had filed this action.  The
Complaint is therefore DISMISSED with leave to amend.

### III. <u>NOTICES</u>

        This action cannot proceed until the court has some
assurance that Morris is aware of this action, that he confirms
under penalty of perjury the truth of his assertions, and that he
is notified of the consequences of filing this action as a
prisoner.  That is, Morris must be notified that, under 28 U.S.C.
§ 1915, as a prisoner, he will be required to pay the full $350
filing fee regardless of pauper status, his Complaint will be
screened and subject to dismissal if it is deemed frivolous,
malicious, or fails to state a claim, and, if he accrues three
actions that are dismissed for these reasons, he may be barred
from proceeding *in forma pauperis* in any federal court.  *See* 28
U.S.C. §§ 1915(a-g).

        Moreover, because Grindling explicitly asserts that
Morris has not grieved his claims, Morris is notified that 42

U.S.C. § 1997e(a) normally requires the court to dismiss any claim that has not, before the filing of a lawsuit, been fully exhausted through the prison's grievance procedure.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *but cf.*, *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (holding that a prisoner's concession to nonexhaustion is a valid ground for dismissal as long as no exception to exhaustion applies).

Finally, Morris is notified that Grindling, as a *pro se* prisoner, cannot represent Morris in this action.  *See C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987). Nor may Morris or Grindling, as *pro se* prisoners, represent any other inmates in a class action.  *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-64 (9th Cir. 2008) (applying the "general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity," including in class actions);  *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966) (affirming the dismissal of a class action for lack of jurisdiction because a *pro se* plaintiff "has no authority to appear as an attorney for others than himself").

This court DISMISSES Morris's Complaint with leave to amend.  This dismissal is intended to permit Morris to consider his options.  If Morris decides to proceed in this action, he must file an amended complaint on or before **March 26, 2013**, that either he himself has signed and verified or that includes some

credible indication that a responsible individual has assisted Morris in providing a signature and verification.  Morris is reminded that the court needs the same assurance on each document that he submits to the court, regardless of who prepares the document.  Morris is also notified that he may not raise claims that are not specific to him but are set forth on behalf of other inmates.  That is, Morris may only bring claims in which he can articulate that a specific individual personally violated Morris's rights under the Constitution, laws, or treaties of the United States.  *See* 42 U.S.C. § 1983.  Of course, Morris need not do anything if he prefers no involvement in what Grindling submitted under Morris's name.  If the court hears nothing further on this matter, the case will be closed.

### IV.  IFP APPLICATION AND REQUEST FOR COUNSEL

Morris's IFP application is similarly unsigned and is also incomplete.  The application lacks a copy of the previous six-months' worth of withdrawals and deposits to Morris's prison account as certified by prison authorities.  *See* 28 U.S.C. § 1915(a)(2).  Morris's *in forma pauperis* application is DENIED without prejudice.  If Morris intends to proceed with this action, he is ORDERED to submit a signed and fully complete IFP application on or before **March 26, 2013**.  Failure to do so will result in dismissal of this action for failure to prosecute.  *See* Fed. R. Civ. P. 41(b).

Until Morris submits a signed amended complaint and fully completed IFP application, or credible information that someone has assisted him in that regard, the court will not consider any motions or documents he has filed. Morris's request for appointment of counsel and class certification are therefore DENIED without prejudice to refiling after he complies with the directions in this order.

### V. CONCLUSION

1. Morris's Complaint is DISMISSED with leave to amend on or before **March 26, 2013.** In the alternative, Morris may, but need not, voluntarily dismiss this action by notifying the court on or before **March 26, 2013.**

2. Morris's *in forma pauperis* application is DENIED without prejudice to refiling a signed and fully complete application on or before **March 26, 2013.**

3. Morris's request for appointment of counsel and class certification are DENIED without prejudice to refiling after he complies with the directions in this order.

4. If Morris fails to submit an amended complaint and *in forma pauperis* application, or a notice of dismissal, on or before **March 26, 2013**, the court will dismiss this action without prejudice for the reasons set forth above.

5. The Clerk is DIRECTED to send Morris a blank prisoner civil rights complaint form and *in forma pauperis* application so

that he may comply with this Order.  The Clerk SHALL note on the docket that Shelley Nobriga, Esq., Hawaii Department of Public Safety Litigation Coordinator, is an interested party to this action.  Finally, the Clerk SHALL send a copy of this Order to MCCC Acting Warden James Hirano and Ms. Nobriga, so that they can ensure that Morris is given appropriate assistance.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 26, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

*Morris v. Sakai, et al.*, 1:13-cv-00084 SOM/RLP; Order Dismissing Complaint and Denying In Forma Pauperis Application and Request for Counsel;G:\docs\prose attys\IFP\DMP\2013\Morris 13-84 som (dny incomp, dsm C, dny m.apptcoun).wpd